F I L E D

CLERK OF COURT

2024 NOV 18 PM 3: 14

SUPERIOR COURT
OF GUAM

## IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,

vs.

**SANDER AWENY,**
DOB: 10/21/2006
**JEREM ALAS ONICHY,**
DOB: 05/28/2006

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CRIMINAL CASE NO. **CF0014-23**
GPD Report No. 23-00397

**DECISION & ORDER
RE. JOINDERS IN MOTION FOR
DECERTIFICATION AND TRANSFER
TO FAMILY COURT**

This matter came before the Honorable Alberto E. Tolentino on February 7 and March 12 of 2024, through joinders filed by Defendant Sander Aweny ("Defendant Sander") and Defendant Jerem Alas Onichy ("Defendant Jerem"). The court held a Motion Hearing on March 12, 2024, to address oral arguments for the motion the Defendants joined: Defendant Alex Aweny's Motion for Decertification and Transfer to Family Court. At the hearing, the court took the matter under advisement pursuant to Supreme Court of Guam Administrative Rule 06-001, CVR 7.1(e)(6)(A) and CR 1.1 of the Local Rules of the Superior Court of Guam.

On August 6, 2024, the court granted Defendant Alex Aweny's Motion for Decertification and Transfer to Family Court without ruling on the joinders for Defendant Sander and Defendant Jerem. Having duly considered the parties' briefs, oral arguments, and the applicable law, the court now issues this Decision and Order **DENYING** Defendant Sander Aweny's and Defendant Jerem Alas Onichy's Decertification and Transfer to Family Court.

## BACKGROUND

Based on events that occurred on or about January 4, 2023, Defendants Jerem Alas Onichy and Sander Aweny were charged with the following offenses: (1) ATTEMPTED HOME INVASION (As a First Degree Felony); (2) ATTEMPTED BURGLARY (As a Second Degree Felony); (3) CRIMINAL MISCHIEF (As a Third Degree Felony); and (4) CRIMINAL MISCHIEF (As a Misdemeanor).[1] Indictment (Jan. 13, 2023).

On January 22, 2024, Defendant Alex Aweny ("Defendant Alex") filed a Motion for Decertification and Transfer to Family Court ("Motion"). On February 7, 2024, Defendant Sander filed his joinder in the Motion, arguing that "virtually every point made in Alex's Motion applies with equal force to him." Joinder (Feb. 7, 2024). After hearing oral arguments on the Motion on March 12, 2024, the court then took the matter under advisement. That same day, Defendant Jerem filed his joinder in the Motion, arguing that "the facts in his case closely resemble those that are set out in said motion." Joinder (Mar. 12, 2024).

On August 6, 2024, the court issued its Decision and Order granting the Motion and transferred Defendant Alex to Family Court. However, the court did not address whether the transfer to Family Court would also be granted for Defendants Sander and Jerem. On October 9, 2024, Defendant Sander renewed his Motion for Decertification and Transfer to Family Court. The People subsequently filed its Opposition to Defendant Sander's renewed Motion on October 22, 2024.

\\

\\

---

[1] Defendant Sander was only charged with ATTEMPTED HOME INVASION (As a First Degree Felony) and ATTEMPTED BURGLARY (As a Second Degree Felony) as listed as charges five and six in the Indictment. Indictment (Jan. 13, 2023).

## DISCUSSION

In deciding whether to transfer Defendants Sander and Jerem to Family Court, 19 GCA § 5106 guides the court's decision to do so as it did for Defendant Alex. The statute states in relevant part:

> (a) A child who is sixteen (16) years of age or older at the time he committed the offense for which he is charged shall automatically be charged as an adult for any act which would constitute a felony of the first or second degree along with any acts which are misdemeanors or felonies of the third degree which are part of the same scheme of criminal activity as the felony. If a child is under sixteen years of age at the time he committed the offense for which he is charged, and if the conduct would constitute an offense under 9 GCA Chapter 16 (Homicides), and if the court after full investigation deems it contrary to the best interest of such child or of the public to retain jurisdiction, the court may, in its discretion, certify such child for proper criminal proceedings to any court which would have trial jurisdiction of such offense if committed by an adult.

19 GCA § 5106(a). In this case, both Defendants were automatically charged as adults, because they were both sixteen at the time of the offenses. To grant both Defendants' transfer to Family Court, the court must now determine, based on clear and convincing evidence, whether the best interests of Defendants Sander and Jerem would be amenable to care, treatment, and training programs offered in the juvenile justice system. To do so, the court must balance the following factors:

> (d) Notwithstanding Subsection (a) of this Section, on motion of either the prosecutor or defendant, or *sua sponte* by the Court, the complaint or indictment may be transferred to the jurisdiction of the Family Court upon a finding based on clear and convincing evidence that the best interest of the minor would be amenable to the care, treatment, and training programs available through the facilities of the juvenile court based on an evaluation of the following:
> (1) the age of the minor;
> (2) the history of the minor, including:
>     (A) any previous delinquent or criminal history of the minor;
>     (B) any previous abuse or neglect history of the minor; and
>     (C) any mental health, physical or educational history of the minor, or a combination of these factors;

(3) the circumstances of the offense, including:
    (A) the seriousness of the offense;
    (B) whether the minor is charged through accountability;
    (C) whether there is evidence the offense was committed in an aggressive and premeditated manner;
    (D) whether there is evidence the offense caused seriously bodily harm; and
    (E) whether there is evidence the minor possessed a deadly weapon;
(4) the advantages of treatment within the juvenile justice system, including, whether there are facilities or programs, or both, particularly available in the juvenile system;
(5) whether the security of the public requires sentencing under Title 9, Chapter 80 of the Guam Code Annotated;
(6) the minor's history of services, including the minor's willingness to participate meaningfully in available services;
(7) whether there is a reasonable likelihood that the minor can be rehabilitated before the expiration of the juvenile court's jurisdiction; and
(8) the adequacy of the punishment or services.

In considering these factors, the court shall give greater weight to the seriousness of the alleged offense and the minor's prior record of delinquency than to the other factors listed in this Subsection.

19 GCA § 5106(d).

**(1) Age of the Minor**

As to the first factor, the court must review the age of the minor when considering whether it falls in favor of transfer to Family Court. Although both Defendants are currently eighteen (18) years old, both were sixteen (16) years old at the time of the offenses in this case. The court previously held that Defendant Alex's age at the time of the offense weighed in favor of transfer to Family Court. Decision and Order at 4 (Aug. 6, 2024). Defendant Jerem was born five months earlier than Defendant Sander who is Defendant Alex's twin brother, which means they were all sixteen (16) years old at the time of the offenses.[2] Like Defendant Alex, their susceptibility to

---

[2] Renewed Mot. (Oct. 9, 2024); *see also* Indictment (Jan. 13, 2023).

influence may be less than that of a younger teenager or child. Nonetheless, this first factor weighs in favor of both Defendants' transfer to Family Court.

**(2) History of the Minor**

Under the second factor, the court must review the history of the minor, which includes the minor's previous delinquent or criminal history; previous abuse or neglect; and mental health, physical, or educational history. 19 GCA § 5106(d)(2). Notably, a minor's prior record of delinquency is a factor that the court *shall* give greater weight to compared to other enumerated factors. 19 GCA § 5106(d).

While this factor asks the court to review previous abuse or neglect of the Defendants, no record was made of either being present for the court to consider. In regards to Defendant Sander's history, the court's records indicate that he previously attended Tiyan High School and has a ninth-grade education as of November 29, 2021. He has also previously attended and completed recommended treatments and court-ordered summer school for his other juvenile cases. Although it is unclear where Defendant Jerem attended school, the court's records indicate that he was employed with the MongMong-Toto-Maite Mayor's Office.

The court previously held that Defendant Alex's prior juvenile history weighed against his transfer to Family Court. Decision and Order (Aug. 6, 2024). Defendant Jerem has no criminal history aside from this case. However, Defendant Sander has a prior criminal history beginning in 2021 of the following charges:

2021: (1) Aggravated Assault, Possession and Use of a Deadly Weapon in the Commission of a Felony; (2) Assault; (3) Criminal Trespass; (4) Underage Consumption of Alcohol; (5) Disorderly Conduct; and (6) Possession and Use of Tobacco Products Underage

2021: (1) Assault on a Peace Officer; (2) Resisting Arrest; (3) Underage Consumption of Alcohol; and (4) Disorderly Conduct

2023: (1) Third Degree Robbery; and (2) Conspiracy

While Defendant Alex had two prior criminal cases, Defendant Sander previously accumulated three juvenile matters in addition to this criminal one. Like Defendant Alex, Defendant Sander's prior criminal history presents his indifference to behavioral consequences for his actions. Therefore, this second factor weighs in favor of Defendant Jerem's transfer to Family Court but against Defendant Sander's transfer to Family Court.

**(3) Circumstances of the Offense**

As to the third factor, the court reviews several circumstances of the offense, such as: seriousness of the offense; whether the minor is charged through accountability; evidence of the offense being committed in an aggressive and premeditated manner; evidence of serious bodily harm; and possession of a deadly weapon. 19 GCA § 5106(d)(3). Like the minor's prior record of delinquency, the court *shall* also give greater weight to the seriousness of the alleged offense compared to the other factors. 19 GCA § 5106(d).

Here, both Defendants are charged with first- and second-degree felonies, each of which are offenses that automatically certified them to be charged as adults. Although there is no evidence of serious bodily harm to the victim, responding police officers noted that the victim appeared distraught and could barely breathe. Magistrate's Compl. at 5 (Jan. 6, 2024).

The court previously held that Defendant Alex's nonaggressive involvement in the offense – holding a screen door open while two co-defendants attempted to enter the victim's residence– weighed in favor of transfer to Family Court. Decision & Order (Aug. 6, 2024). However, the circumstances of the case for Defendants Sander and Jerem are different. While it is unclear whether the events occurred in a premeditated manner, the Defendants' involvement was aggressive unlike Defendant Alex. Both joining Defendants allegedly attempted to "jump inside

the residence through the opening between the security and main doors." Magistrate's Compl. at 5 (Jan. 6, 2023). Further, Defendant Jerem allegedly used a metal object to strike a window of the residence and the front windshield of the victim's 2010 Toyota Sienna automobile. *Id.*

Based on the circumstances of the case for Defendants Sander and Jerem, this factor weighs against their transfer to Family Court.

### (4) Advantages of the Juvenile Justice System

As to the fourth factor, the court must look at the advantages of treatment facilities or programs that are particularly available in the juvenile system. 19 GCA § 5106(d)(4). In both the Defendants' joinders, they generally argue that Defendant Alex's Motion applies equally to each joining Defendants. In this Motion, Defendant Alex claimed that the juvenile system would better address his educational needs, because the Department of Youth Affairs ("DYA") is "more akin to a proper scholastic environment compared to a correctional facility" like Department of Corrections ("DOC"). Decision and Order at 5 (Aug. 6, 2024). Although Defendant Alex indicated that he continues to attend school and would benefit from court-ordered counseling, the same cannot be said for Defendants Sander and Jerem. *Id.*

Both Defendants provide no basis for why they would benefit from court-ordered counseling. And it is also unclear whether there is a history of compliance or participation in counseling, whether court-ordered or not. On October 3, 2024, the court issued a bench warrant for both Defendants Sander and Jerem.[3] Neither warrant has been returned since its issuance. So, it is unlikely that both Defendants are currently attending school while there is an active bench warrant for their arrest. Therefore, this factor weighs against their transfer to Family Court.

\\

---

[3] Bench Warrant (Jerem) (Oct. 3, 2024); Bench Warrant (Sander) (Oct. 3, 2024).

**(5) Security of the Public**

This factor asks whether the Defendants should be sentenced for the sake of the public's security. In its Decision & Order, the court held that Defendant Alex's conduct did not involve the public at large, because this was an attempted violent encounter over a personal feud that took place at the victim's residence. Decision and Order at 5 (Aug. 6, 2024).

The People cite a Declaration of Crime Victim when reasoning that "the victim has stated that she fears the defendants will kill her." Opp'n at 3 (Oct. 22, 2024). However, no such Declaration was filed with the court; only an Affidavit of Probable Cause was attached to the Magistrate's Complaint. Despite the discrepancy, both Defendants are a flight risk based on their active bench warrants, which the court issued for their arrest in October of this year. Although Defendant Jerem has no prior violent history, Defendant Sander has such history as indicated above. While the court also held at the security of the public would not be benefited by the increased monitoring of Defendant Alex, the same cannot be said for these joining Defendants. Therefore, this factor weighs against their transfer to Family Court.

**(6) Minor's History of Services and Willingness to Participate in Services**

This factor asks the court to look at the Defendants' history of services. While there is no history of services for Defendant Jerem, Defendant Sander has attended and completed court-ordered summer school and recommended treatment programs in his previous juvenile matter. Even if there is no record of services, this factor also asks the court to look at whether the Defendants are willing to "meaningfully participate in available services." 19 GCA 5106(d)(6).

Despite being counseled several times by Probation, both Defendants have shown an unwillingness to participate in services for this case. For Defendant Jerem, several violations for failure to report to Probation as ordered shows his unwillingness to participate in available services

within the juvenile justice system.[4] Although Defendant Sander meaningfully participated in recommended treatment programs in the past, his unwillingness to participate in services for this present case is based on violations for failure to report and one for using or consuming amphetamines and methamphetamines.[5] Although the Defendants could benefit from available services in the juvenile justice system, their active bench warrants show that they are still unwilling to meaningfully participate in any services, because they continue evade the court's order to report to Probation. Therefore, this factor weighs against their transfer to Family Court.

**(7) Reasonable Likelihood of Rehabilitation**

This factor would weigh in favor of the Defendants' transfer to Family Court if there is a reasonable likelihood that the Defendants can be rehabilitated before the juvenile court's jurisdiction expires. 19 GCA § 5106(d)(7). As mentioned earlier, both Defendants are currently eighteen years old. However, 19 GCA § 5105 allows Family Court to still retain jurisdiction until the Defendant turns twenty-one (21) depending on the circumstances. If the court were to grant the Defendants' transfers to Family Court, Family Court could have jurisdiction until May 28, 2027, for Defendant Jerem and until December 21, 2027, for Defendant Sander.

Both Defendants have not been present for their court hearings since March 1, 2024, although required to attend all hearings. Defendant Jerem has not reported to Probation since July 16, 2024,[6] while Defendant Sander last reported to Probation on May 13, 2024.[7] Without maintaining consistent contact with the court, it is unclear how the Defendants can be rehabilitated before the juvenile court's jurisdiction expires in 2027. So, it is unlikely that both Defendants can

---

[4] 1st Violation Report (Sept. 15, 2023); 2nd Violation Report (Mar. 11, 2024); 3rd Violation Report (July 16, 2024); 4th Violation Report (Oct. 1, 2024).
[5] 1st Violation Report (Jan. 8, 2024); 2nd Violation Report (July 15, 2024).
[6] 3rd Violation Report (July 16, 2024).
[7] 2nd Violation Report (July 15, 2024).

be rehabilitated through the juvenile system's services offered, given that the court is still unable to locate them. Therefore, this factor weighs against their transfer to Family Court.

**(8) Adequacy of the Punishment**

The last factor looks at how adequate the punishment or services would be for the Defendants. In this case, the Defendants face at least fifteen (15) years for the felony offenses they were charged for allegedly committing. Defendants Jerem and Sander were the ones who allegedly attempted to jump inside the victim's residence. Magistrate's Compl. at 5 (Jan. 6, 2023). A metal object and what "appeared to be a machete" were also involved; however, it is unclear which Defendant wielded the alleged machete in the surveillance video or whether the metal object and machete are the same weapon. *Id.*

In its Decision & Order, the court reasoned that punishment through DOC was inadvisable for Defendant Alex, because "he did not personally use the deadly weapon that was involved in the commission of the crime, nor was anybody physically harmed as a result of the encounter." Decision and Order at 6 (Aug. 6, 2024). Unlike Defendant Alex's involvement in the events, Defendants Jerem and Sander had a more active participation in the events that night because they tried to enter the victim's residence themselves. In addition, Defendant Jerem used a weapon to strike the victim's residence and automobile. Because the Defendants cannot adhere to the court's orders on their own, assistance through further supervision at the Department of Corrections appears adequate and advisable for both Defendants based on the circumstances. Therefore, this factor weighs against transfer to Family Court.

After analyzing all factors under 19 GCA § 5106(d), the court found only two factors weighed in favor of Defendant Jerem's transfer to Family Court, and only one for Defendant Sander's transfer. Therefore, the court finds, based on clear and convincing evidence, that the best

interests of Defendants Jerem Onichy and Sander Aweny would not be amenable to the care, treatment, and training programs available through the juvenile court system.

## CONCLUSION

For the reasons set forth above, the court **DENIES** Defendant Sander Aweny's Motion for Decertification and Transfer to Family Court. The court further **DENIES** Defendant Jerem Alas Onichy's Motion for Decertification and Transfer to Family Court.

**SO ORDERED** this _____ NOV 1 8 2024 _____.



_____
**HONORABLE ALBERTO E. TOLENTINO**
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
AG S. Teker,
T. Timblin
Date: 11 18 Time: 3:26 pm
*Darlene M L Gatchalian*
Deputy Clerk, Superior Court of Guam